# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KONSTANTIN SHVARTSER,<br><br>Plaintiff,<br><br>v.<br><br>EVELINA LEKSER,<br><br>Defendant. | Civil Action No. 16-1199 (JDB) |

## MEMORANDUM OPINION

Plaintiff Konstantin Shvartser and his adult daughter, defendant Evelina Lekser, jointly own real property in Washington, D.C. They are embroiled in an acrimonious dispute, and they contest nearly all of the details about how they came to acquire the property, which party has breached their obligations with respect to the property, and who has defrauded whom. However, there is no real dispute that they own the property as joint tenants. Now before the Court is Shvartser's motion for partial summary judgment on his claim for partition. Because under D.C. law, any co-tenant has an absolutely right to request a partition, the Court will grant Shvartser's motion. And because the property is a single-family home, it cannot be partitioned-in-kind and therefore the Court will order partition by sale.

## BACKGROUND

Shvartser and Lekser purchased a single-family home at 2150 Florida Avenue, Northwest ("the property"), on October 24, 2008. Pl.'s Statement of Undisputed Facts [ECF No. 47-3] ¶ 1. From that point, their accounts dramatically diverge. On a motion for summary judgment, the

1

Court accepts as true the facts presented by the non-movant. Here, however, the Court will also briefly recount the narrative as told by the moving party so as to explain the proceedings so far.

By Shvartser's account, he and Lekser engaged in a joint venture to purchase and then resell the property for a profit, but he has been swindled by Lekser at every turn. His version is as follows. The two parties purchased the property in 2008 with the intent to renovate it and then resell it. Id. The property cost approximately $800,000, and they took out a mortgage in both of their names from Bank of America for $417,000. Id. ¶ 3. Lekser was responsible for managing the property and overseeing renovations because she resides in the United States, while Shvartser resides in Russia. See Am. Compl. [ECF No. 44] ¶ 13. But eventually Shvartser became displeased with the pace of renovations, and as a result, on March 12, 2013, they entered into a written contract specifying that Shvartser would manage the remaining renovations and sell the property. See id. ¶¶ 16, 19; Pl.'s Statement of Undisputed Facts ¶ 4. Then, in 2015, Lekser began a scheme to defraud Shvartser of the value of his share of the property. First, Lekser executed a fraudulent power of attorney in Shvartser's name. Am. Compl. ¶¶ 22–26. Then, Lekser used this fraudulent power of attorney to refinance the Bank of America mortgage with a new loan worth $800,000 from an entity known as SP Funding 452 LLC. Id. ¶¶ 28, 30. Lekser used approximately half of this new loan to pay off the remaining portion of the Bank of America loan, then pocketed the remaining half. Id. ¶¶ 32–33. In the meantime, Lekser failed to make the required payments on the SP Funding loan, and as a result, that loan is now in default. See Pl.'s Statement of Undisputed Facts ¶¶ 13–16.

Lekser paints a very different picture, which the Court accepts as true at this stage of the proceeding. She describes all of Shvartser's actions as part of a long-running attempt to manipulate Lekser so as to take advantage of her U.S. citizenship to obtain property and assets in this country.

See Answer [ECF No. 53] ¶ 125. She describes the property as a gift from Shvartser to her for attending George Washington University. Id. ¶ 127. Shvartser and Lekser executed "multiple power of attorneys [sic] to have Lekser take charge of renovating and rehabilitating the house." Id. ¶ 128. Shvartser then embarked on a fraudulent scheme "in a concerted effort to force Lekser to surrender" her claim to the property to Shvartser. Id. ¶ 129. Lekser believes that Shvartser hired a third party to harass her, which resulted in court proceedings between Shvartser, Lekser, and that third party in D.C. Superior Court, as well as a restraining order against the third party. Id. ¶¶ 131–32. At the same time, Shvartser failed to pay the costs of renovations that he had agreed were his responsibility. Id. ¶¶ 133, 136. Indeed, Lekser claims that this pattern of manipulation is so severe that Shvartser is liable for her emotional harm. Id. ¶¶ 144–46. However, although Lekser generally denies any malfeasance, she does not deny (or address at all) that a power of attorney was executed in 2015 and that she obtained a loan from SP Funding for $800,000 in 2015.

In 2016, Shvartser filed a complaint in this Court. See Compl. [ECF No. 1]. Since that time, multiple disputes have arisen between the parties about all aspects of this litigation, some of which the court has ruled on, but which are not relevant to this motion for partial summary judgment. In March 2017, Shvartser filed an amended complaint that included a count for partition of the property by sale. Am. Compl. ¶¶ 81–92. He has now filed for partial summary judgment on that claim. See Pl.'s Mot. for Partial Summ. J. [ECF No. 47-3]. He asserts that as a cotenant he has an absolute right to partition under D.C. Code § 16-2901, that the partition must be by sale, that he (or his agent) must be permitted to access the property for the purpose of completing renovations and effectuating the sale, and that the proceeds should be deposited with the Court until the final resolution of the parties' various claims, which would determine the portion of the proceeds to which each party is entitled. Shvartser argues that the Court should grant partition

3

before resolving the other claims because the house can sell for a higher price the sooner it is sold, and allowing the house to languish unused for the duration of this proceeding would result in waste. Lekser, pro se in these proceedings, opposes the motion for partition and contests that partition by sale is more appropriate than partition in kind.

## **LEGAL STANDARDS**

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of motion only), admissions, interrogatory answers, or other materials," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); see also Celotex, 477 U.S. at 323.

In determining whether there exists a genuine dispute of material fact sufficient to preclude summary judgment, the Court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. Moreover, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249–50 (internal citations omitted). Summary judgment, then, is appropriate if

the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## ANALYSIS

### A. The Partition

Shvartser claims that under D.C. Code § 16-2901 he has an absolute right to partition. He is essentially correct. That provision states: "The Superior Court of the District of Columbia may decree a partition of lands . . . on the complaint of a tenant in common . . . or of a joint tenant; or when it appears that the property can not be divided without loss or injury to the parties interested, the court may decree a sale thereof and a division of the money arising from the sale among the parties, according to their respective rights." D.C. Code § 16-2901(a) (2012). The D.C. Court of Appeals has labeled it a "right" and explained that "[a] cotenant's unilateral right of partition is an integral element of the form of property ownership inherited from English law." Carter v. Carter, 516 A.2d 917, 919 (D.C. 1986). This right allows "any dissatisfied cotenant to, in effect, withdraw from and dissolve the quasi-partnership that cotenancy entails." Id. As early as 1892, the Supreme Court recognized this right in D.C. law. See Willard v. Willard, 145 U.S. 116 (1982). The D.C. Courts have confirmed that this right still exists, in substantially the same form, as enacted through the modern D.C. Code. See Carter, 516 A.2d at 920 (discussing Willard); Ballard v. Dornic, 140 A.3d 1147, 1150–51 (D.C. 2016).

The D.C. courts have recognized some limitation on this right. For example, the right can be limited by a prior agreement between the parties. See Ballard, 140 A.3d at 1150 ("a cotenant's unilateral 'right to partition . . . is like most property rights subject to possible limitation by voluntary acts of the parties'" (quoting Carter, 516 A.2d at 921)). And, for example, the right does not extend to property held by spouses in a tenancy by the entirety. See D.C. Code § 16-2901

5

(specifying right to partition by tenants in common and joint tenants); Arthur v. District of Columbia, 857 A.2d 473, 487 (D.C. 2004). Because the parties here are not spouses, a tenancy by the entirety is not relevant.

Thus, Shvartser is entitled to summary judgment on his claim for partition if there are no genuine issues of material fact as to whether Shvartser and Lekser own the property as cotenants (whether as tenants in common or as joint tenants), and there is no prior agreement to limit their rights to partition. The Court finds that these two prerequisite facts are, indeed, undisputed.

There is no question that Shvartser and Lekser own the property as joint tenants. Both Shvartser's complaint and Lekser's answer acknowledge that they purchased the property in October 2008. See Am. Compl. ¶ 6; Answer ¶ 6. The copy of the deed attached to Shvartser's motion for summary judgment specifies that they purchased the property as joint tenants with a right of survivorship on October 24, 2008. See Deed [ECF No. 47-5]. Although Lekser argues that the purpose of the purchase was not to renovate and sell the house, but instead as a gift for her, she does not contest the validity of the deed itself. See Lekser Decl. [ECF No. 57] ¶ 5(a). D.C. Code § 42-516(a) states that "[e]very estate granted . . . to 2 or more persons in their own right . . . shall be a tenancy in common, unless expressly declared to be a joint tenancy." Here, it is undisputed that the property was granted to Shvartser and Lekser—both adults in their own right—and was expressly declared in the deed to be a joint tenancy. Given that neither party contests the validity of the deed, the Court must conclude that it is undisputed that they own the property as joint tenants.

Lekser does, however, assert that the property was intended as a gift to her. It is not clear whether she refers to the parties' informal or unspoken intentions regarding the use of the property, or to a formal legal agreement designed to alter their respective ownership rights. Nevertheless,

even accepting Lekser's statement as true, she has not identified any evidence that could show a change in their legal status as joint tenants. Lekser has not alleged the existence of any written contract to alter the ownership of the property. In the District of Columbia, any oral agreement regarding real property is not enforceable under the statute of frauds. See D.C. Code § 28-3502 (statute of frauds); Stancil v. First Mt. Vernon Indus. Loan Ass'n, 131 A.3d 867, 877 (D.C. 2014) ("In the absence of a qualifying writing, the Statute of Frauds leaves real-property agreements unenforceable."). Thus, regardless of the parties' unspoken intention or any oral agreements regarding the purpose of the property, the legal title is owned by Shvartser and Lekser as joint tenants. Although Lekser might dispute the legal conclusion that they own the property as joint tenants, she has not presented any information to contest the undisputed facts leading to that legal conclusion.

Nor is there is any evidence that the parties entered into an agreement restricting their respective rights to partition. Although the parties do not see eye-to-eye regarding who was obligated to fund the renovations and who failed to comply with that agreement, neither party has alleged any facts that could support an inference that they agreed to restrict their partition rights. Indeed, Lekser does not even assert that any such restriction exists.

Therefore, Shvartser has a unilateral right to request that the property be partitioned. What remains is for the Court to exercise its discretion to determine whether a partition in kind or a partition by sale is appropriate. See Ballard, 140 A.3d at 1154 ("[T]he trial court has 'discretion . . . in choosing between a partition in kind or by sale.'" (quoting Carter, 516 A.2d at 920)).

Here, because the property is a single-family home, a partition by sale is appropriate. As stated in § 16-2901, "when it appears that the property can not be divided without loss or injury to

7

the parties interested, the court may decree a sale thereof and a division of the money arising from the sale among the parties, according to their respective rights." As the D.C. Court of Appeals has explained, "[t]he general test of whether a partition-in-kind—a physical division of the property according to the cotenants' shares—would result in loss or injury to the owners is whether the property can be divided 'without materially impairing its value or the value of an owner's interest in it.'" Ballard, 140 A.3d at 1151 (quoting 59A Am. Jur. 2d. Partition § 121 (2016)). Generally, a single-family home cannot be physically divided and therefore a partition by sale is appropriate in such instances. Id. A partition in kind is more appropriate for property that can be easily divided without losing value, such as a vacant lot. Lekser disputes this assertion but does not provide any argument for why this home could be partitioned in kind, contrary to most single-family homes. For example, a property that was once a single-family home but is now broken into condominium units, could perhaps be partitioned in kind without impairing the value of the property. But there is no information in this case that the property at issue is such an exception. Therefore, as is typical when single-family homes are partitioned, the partition here must be by sale rather than in kind.[1]

**B. The Sale**

The "normal route in a partition case is to appoint[] a trustee to market and sell the property." Johnston v. Hundley, 987 A.2d 1123, 1125 n.1 (D.C. 2010) (internal quotation marks omitted) (alteration in original). This approach is preferred because it "avoid[s] a significant amount of litigation and expense" that can arise when one party markets and sells the property herself, and the other party believes that she has been less than diligent in doing so. See id.

---

[1] Shvartser argues that a partition by sale is particularly appropriate in this instance, where the parties already agreed in 2013 by contract that they would sell the property. However, Lekser disputes the validity of this contract. See Lekser Decl. ¶ 5(c). Therefore, the Court cannot rely on that contract at this stage of the litigation.

Here, Shvartser requests that he be permitted to market and sell the house, and complete the necessary renovations to do so. He does not explain why this option is preferable to appointing a trustee. Lekser, for her part, opposes the claim for partition but does not specify whether she objects to Shvartser taking responsibility for the renovations and sale of the property, should he be granted summary judgment.

The Court is willing to permit Shvartser to prepare the property for sale and to sell it with the assistance of competent real estate professionals, because the parties' financial interests actually align. Although they disagree as to whether partition is appropriate, once the Court orders the partition by sale, both parties have an interest in maximizing the payout that they will receive from the sale of the property. This case is therefore unlike Johnston v. Hundley, where the D.C. Court of Appeals encouraged trial courts to follow the "normal route" of appointing a trustee—there, the party preparing the property for sale had an incentive to delay the process, 987 A.2d at 1128, whereas here, Shvartser has no such incentive, and indeed has repeatedly expressed extreme frustration with what he perceives as delays by the defendant. Thus, the Court is not concerned that Shvartser would be less-than-diligent in his efforts to promptly sell the property for the highest price available, because that is what he seeks and to do so would benefit both him and Lekser.

**C. The Funds**

Shvartser acknowledges that the other claims pending in this litigation will determine the portion of the proceeds that each party is entitled to receive. He therefore suggests that the payment from the sale of the property be deposited in an escrow account or with the Court pending the resolution of this case. The Court agrees.

Normally, "in a suit for partition, the court must first determine the respective shares which the parties hold in the property, before the property can be divided." Sebold v. Sebold, 444 F.2d

9

864, 872 (D.C. Cir. 1971). However, partition is "subject to equitable considerations," and a court may therefore order a partition by sale before determining the parties' respective shares, when necessary. See Johnston, 987 A.2d at 1125–26 (ordering partition before determining the parties' respective shares). Here, Shvartser has represented that the property is losing value due to the delay in preparing it for sale because it is not currently in use, because the most profitable time to sell is in the spring (or failing that, the summer or early fall) and because the property is currently in default with its mortgage lender, SP Funding. The parties do not dispute that the property is not currently occupied. See Pl.'s Statement of Undisputed Facts ¶ 16; Def.'s First Opp'n [ECF No. 48] ¶ 2. And although Lekser generally disputes Shvartser's contention—which he asserted in an affidavit from a real estate agent—that it would be most profitable to sell the home as soon as possible, she does not present competing evidence. See Pl.'s Statement of Undisputed Facts ¶ 24; Harris Aff. [ECF No. 43-16] ¶ 2; Lekser Decl. ¶ 6(d).

The foreclosure issue is murkier. Shvartser has presented a notice of default from SP Funding. See Not. of Default [ECF No. 47-12]. Lekser represents that she is engaged in a foreclosure mediation in the D.C. Superior Court that she believes will eliminate the possibility of foreclosure. See Lekser Decl. ¶ 5(g). But Shvartser contends that he is unaware of this proceeding, and that it could not possibly resolve the issue of foreclosure (and the necessary corollary of whether the lender owns the property), because he is also an owner of the property and is not a party to that mediation. See Pl.'s Reply [ECF No. 59] at 4. At this stage, it is not appropriate for the Court to resolve any factual issues regarding the status of that proceeding or what affect that mediation might have on the ownership of the property. Thus the Court will not rely on the parties' representations about the foreclosure mediation in reaching its current conclusions in this proceeding.

However, even disregarding whether foreclosure is looming, in light of Shvartser's assertion that the property is more valuable if it is sold as soon as possible, the Court's desire to avoid continued unnecessary delays in this litigation, and the lack of any countervailing considerations that militate in favor of deferring ruling on this issue, the Court will order that the partition by sale be completed even though the remaining claims are still pending. The Court will also order that the proceeds of this sale be deposited with the Court until the remaining claims in this litigation are resolved or further order of the Court.

## **CONCLUSION**

For these reasons, the Court will grant Shvartser's motion for partial summary judgment on his claim of partition by sale. The Court will also grant his request for access to the property for the purpose of preparing the property for sale, including carrying out any renovations needed for that purpose, and then selling the property. A separate order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 5, 2017